FILED

2026 Apr-22  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CHERYL HAYNES, and MARCELLUS GARNER**, individually, on behalf of the AlaTrade Foods Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STEPHEN C. JAMES**, as trustee of the AlaTrade Foods Holdings, Inc. Employee Stock Ownership Trust,<br>**ALATRADE FOODS HOLDINGS, INC.,**<br>**ALATRADE FOODS, INC.,**<br>**DAVIS LEE,**<br>**BETH LEE, and**<br>**BETH LEE** as trustee of the Davis Lee 2017 Irrevocable Trustee Family Trust,<br><br>**Defendants.** | **Case No.** |

## COMPLAINT

Plaintiffs Cheryl Haynes and Marcellus Garner, by their undersigned attorneys, individually, on behalf of the AlaTrade Foods Holdings, Inc. Employee Stock Ownership Plan, and on behalf of similarly situated participants in the Plan and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiffs Cheryl Haynes and Marcellus Garner ("Plaintiffs") bring this suit against Stephen C. James (the "Trustee"), the fiduciary trustee for the AlaTrade Foods Holdings, Inc. Employee Stock Ownership Plan (the "Plan" or the "ESOP") and its trust, the AlaTrade Foods

Holdings, Inc. Employee Stock Ownership Trust ("ESOT"), at the time the Plan acquired shares of AlaTrade Foods Holdings, Inc. ("AlaTrade" or the "Company") in 2021; AlaTrade; AlaTrade Foods, Inc. ("Alatrade Foods"); Davis Lee; Beth Lee; and Beth Lee as Trustee of The Davis Lee 2017 Irrevocable Trustee Family Trust ("Family Trust"). Davis Lee was the sole Company director and the Company's Chief Executive Officer (CEO). He, his wife Beth Lee, and the Family Trust were parties in interest to the Plan from whom the Plan acquired the stock (collectively the "Selling Shareholders," and with the Trustee, Alatrade, and Alatrade Foods, the "Defendants").

2.      Plaintiffs are participants, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan who were vested in shares of AlaTrade allocated to their accounts in the Plan.

3.      This action is brought under Sections 404, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when he caused the Plan to engage in ERISA prohibited transactions in connection with its leveraged purchase of AlaTrade stock from the Selling Shareholders, and other plan-wide relief. Specifically, the Trustee caused the Plan to engage in prohibited transactions under ERISA Section 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D), when he caused the Plan to purchase Company stock from the Selling Shareholders and transfer assets of the Plan to them, and financed that purchase with loans from the Selling Shareholders and the Company, who were parties in interest to the Plan. The Selling Shareholders were knowing participants in the prohibited transactions.

4.      As alleged below, the Plan, Plaintiffs and all Plan participants have been injured and participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, AlaTrade was a privately-held company, the Plan's sponsor, and a party in interest to the Plan. AlaTrade adopted the Plan effective retroactively as of January 1, 2020.

6.      On June 14, 2021, the Plan, through its ESOT, purchased from the Selling Shareholders 1,000,000 shares of AlaTrade common stock, which represented all of the issued and outstanding common stock of AlaTrade, for $160,000,000 (the "ESOP Transaction"). The ESOP financed the purchase with (i) a $10,345,000 cash contribution from the Company to the ESOP; (ii) $78,380,750 of cash loaned from the Company to the ESOP (the ESOP then paid the Selling Shareholders approximately $88,750,000 in cash for their shares); and (iii) subordinated promissory notes issued by the ESOP in favor of the Selling Shareholders in the principal amount of $71,274,249.98. After the ESOP Transaction, the loans were refinanced such that the Company became liable to the Selling Shareholders on the $71 million note and the ESOP added that amount to the $78 million already loaned to the Plan.

7.      The Trustee represented the Plan and its participants as fiduciary trustee in the ESOP Transaction. He had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf. The stock and loan transactions that the Trustee caused the Plan to enter into with parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), were prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

8.      The ESOP paid more than fair market value for AlaTrade stock for several reasons as detailed below. Among other things, the Trustee relied on a valuation that utilized an inappropriate capital structure in the income method and failed to account for the dilutive impact of synthetic equity issued as part of the ESOP Transaction. These valuation errors caused the ESOP to pay tens of millions of dollars in excess of fair market value.

9.    Davis Lee, as CEO and sole board member of AlaTrade, was centrally involved in conceiving of, facilitating, and executing the ESOP Transaction and had access to and knowledge of company financials, prior attempts to sell the Company, the terms of the ESOP Transaction, the facts rendering the stock purchase and loan transactions prohibited under ERISA § 406(a), and other Company information. Beth Lee, who participated in the ESOP Transaction individually and as trustee of the Family Trust, and who was a "relative" of Davis Lee within the meaning of ERISA as his spouse, had knowledge of the terms of the ESOP Transaction, AlaTrade's value, and the facts rendering the stock purchase and loan transactions prohibited under ERISA § 406(a). Selling Shareholders are liable under ERISA for knowingly participating in the prohibited transactions.

10.    AlaTrade and its predecessor (and later wholly-owned subsidiary) AlaTrade Foods appointed the Trustee as ESOT trustee in the ESOP Transaction. AlaTrade also appointed the Plan's Claims Fiduciary, who conducted a claims review process that denied Plaintiffs a full and fair review in violation of ERISA when Plaintiffs sought to exhaust Plan administrative processes and remedies on the claims asserted herein.

11.    Through this action, Plaintiffs seek to enforce their rights under ERISA and the Plan. Specifically, Plaintiffs seek, in the alternative, to recover the losses incurred by the Plan and the improper profits realized by Defendants resulting from their causing prohibited transactions and knowingly participating in the prohibited transactions, breaching fiduciary duties under ERISA and knowingly participating in fiduciary breaches of duty, and equitable relief, including reformation of Transaction contracts, rescission of the ESOP Transaction (as a fallback remedy only in lieu of a monetary award of the Plan's losses, restitution or disgorgement), and removal of the Trustee as a fiduciary and enjoinment of him from acting as a fiduciary for any employee benefit plan that covers or includes any AlaTrade employees or members of the Class. Plaintiffs

4

request that Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge to the Plan any improper profits, that these prohibited transactions be declared void, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

12.     With regard to Count V only, Plaintiffs individually seek from AlaTrade appropriate equitable relief including a surcharge remedy of recovery of their costs and attorneys' fees in the sham Plan administrative review process in which their claims were not given the full and fair review required under ERISA § 503(2), 29 U.S.C. § 1133(2), in violation of AlaTrade's and AlaTrade Foods' fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a).

## JURISDICTION AND VENUE

13.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), to require Defendants to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries, parties in interest, or others through the receipt or use of Plan assets in violation of ERISA, and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

14.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and it has original jurisdiction pursuant to 28 U.S.C. § 1331.

15.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan is administered in Guntersville, Alabama.

**PARTIES**

16. Plaintiff Cheryl Haynes is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the Plan was adopted as of January 1, 2020. Plaintiff Haynes resides in Albertville, Alabama. She was a Product Support Specialist at Alatrade Foods. She was employed there from February 2017 to March 2024. At the time she left employment at AlaTrade Foods, she was vested in shares of AlaTrade in her ESOP account.

17. Plaintiff Marcellus Garner is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the Plan was adopted as of January 1, 2020. Plaintiff Garner resides in Columbus, Georgia. He worked at one of the Company's production facilities as a de-boner. He was employed by AlaTrade Foods from May 2014 to September 2023. At the time he left employment at AlaTrade Foods, he was vested in shares of AlaTrade in his ESOP account.

18. Defendant Stephen C. James, hereinafter the "Trustee," served as the Trustee and fiduciary of the ESOP and its ESOT at the time of the ESOP Transaction. The Trustee had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

19. At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because he exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

20. Defendant Davis Lee was at the time of the ESOP Transaction the sole member and Chairman of AlaTrade's Board of Directors and AlaTrade's CEO. He was a Selling Shareholder in the ESOP Transaction, directly or indirectly.

21.     Defendant Davis Lee was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director and officer of AlaTrade, and/or as a director or officer or individual having powers or responsibilities similar to those of a director or officer of related organizations whose eligible employees were covered by the Plan; and/or, as a 10 percent or more shareholder, directly or indirectly, of AlaTrade. Davis Lee was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a fiduciary because he served on the AlaTrade Board of Directors and exercised the Board's (or the Board's predecessor's) fiduciary authority to appoint other fiduciaries including the ESOP Trustee and the ESOP Committee, he had the duty and responsibility to review the performance of the Trustee and the Plan Administrator, and the Board of Directors and the Company as Plan Administrator are Named Fiduciaries of the Plan. Davis Lee was also a party in interest under ERISA § 3(14)(E), 29 U.S.C. § 1002(14)(E), as a direct or indirect owner of 50% or more of the voting power of the Company.

22.     Defendant Beth Lee was a Selling Shareholder in the ESOP Transaction, directly or indirectly. She was the spouse of Davis Lee at the time of the ESOP Transaction.

23.     Defendant Beth Lee was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a 10 percent or more shareholder, directly or indirectly, of AlaTrade, including as Trustee of the Family Trust. Beth Lee was also a party in interest because she was a "relative" (spouse) of Davis Lee as defined in ERISA. *See* 29 U.S.C. § 1002(14)(F), 1002(15).

24.     Defendant The Davis Lee 2017 Irrevocable Family Trust was a party in interest as a 10% or more shareholder and/or as, directly or indirectly, owned or held by Davis Lee. *See* 29 U.S.C. § 1002(14)(G), (H).

25.    Defendant AlaTrade was formed in June 2021 as the parent company and sole owner of AlaTrade Foods. AlaTrade was a party in interest under 29 U.S.C. § 1002(14)(A) and (C) as an employer whose employees are covered by the Plan, as the fiduciary Plan Administrator, and as a Named Fiduciary. AlaTrade's predecessor, AlaTrade Foods, LLC, initially appointed the Trustee as Plan trustee for the ESOP Transaction, which appointment AlaTrade maintained in a fiduciary role after its formation, including at the time of the ESOP Transaction.

26.    Defendant AlaTrade Foods was formed in August 2000 as an Alabama limited liability company and converted to an Alabama corporation in June 2021. It was the predecessor of AlaTrade, and in June 2021 became a subsidiary operating company owned by AlaTrade. AlaTrade Foods was a party in interest under 29 U.S.C. § 1002(14)(A) and (C) as an employer whose employees were covered by the Plan and as a Plan fiduciary who appointed the Trustee.

## FACTUAL ALLEGATIONS

27.    AlaTrade Foods was founded by Davis Lee on August 24, 2000.

28.    AlaTrade was formed on June 4, 2021 as the parent company to Alatrade Foods, which became the subsidiary operating company.

29.    AlaTrade Foods had been an Alabama limited liability company but was converted into an Alabama corporation on June 9, 2021. All of AlaTrade Foods' issued and outstanding common stock was owned by AlaTrade on the date of the ESOP Transaction.

30.    At the time of the ESOP Transaction, AlaTrade Foods and AlaTrade were headquartered in Guntersville, Alabama and owned three processing plants in Alabama.

31.    AlaTrade Foods provides poultry processing services, primarily on a contract basis, as well as value-add services such as marinating, breading, and cooking poultry.

32. In 2017, AlaTrade Foods initiated a sales process that failed to result in offers that were acceptable to the Selling Shareholders.

33. AlaTrade established the Plan with a retroactive effective date of January 1, 2020.

34. Qualifying employees of AlaTrade and its affiliated companies who participate in the Plan, including AlaTrade Foods, are covered by the Plan.

35. AlaTrade is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

36. The Plan's most recent Form 5500, filed on October 2, 2025, reports that AlaTrade's address, in its capacities as Plan Sponsor and Plan Administrator, is at 725 Blount Avenue, Guntersville, Alabama 35976. AlaTrade reported this same address on its annual Forms 5500 in 2021, 2022, and 2023.

37. AlaTrade is and was from the inception of the Plan the Plan's Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a Named Fiduciary of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). The Company is responsible for the administration and management of the Plan.

38. AlaTrade is and was an ERISA fiduciary to the Plan at all relevant times because it is the Plan's Named Fiduciary; it is the Plan Administrator; and it possesses and exercises through the Board of Directors the fiduciary power to appoint and remove other Plan fiduciaries, including the ESOT trustee.

39. As a Plan fiduciary, and an employer whose employees are covered by the Plan, AlaTrade is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

**The Plan and ESOP Transaction**

40. The Plan is a pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). It is a defined contribution plan, under which a separate individual account is maintained for each participant.

41. The Plan is designed and operates as an employee stock ownership plan (ESOP) within the meaning of Internal Revenue Code Section 4975(e)(7) and Section 407(d)(6) of ERISA, 29 U.S.C. § 1107(d)(6). The Plan was designed to invest primarily in the employer securities of AlaTrade. The Plan's principal asset was AlaTrade stock at all times since the ESOP Transaction. AlaTrade stock is not and never was readily tradeable on an established securities market.

42. On June 14, 2021, the Plan, through its ESOT, purchased from Selling Shareholders, directly or indirectly, 1,000,000 shares of AlaTrade common stock for $160,000,000.

43. The ESOP financed the purchase of the AlaTrade shares with a $10.5 million cash contribution to the ESOP; a $78.4 million loan from the Company that was paid to the Selling Shareholders for their shares along with the $10.5 million contribution; and $71.3 million in promissory notes from the ESOP in favor of the Selling Shareholders which were subsequently assigned to the Company bringing the Plan's indebtedness to the Company to approximately $149.7 million. The term loan agreement between the ESOP and the Company provides all outstanding principal and accrued interest thereon were due in full in thirty years.

44. The Notes to Financial Statements to the Plan's 2021–2024 Forms 5500 each state: "The Plan invests in Company common stock and has indebtedness to the Company. These are related party and party-in-interest transactions."

**The Fiduciary Trustee**

45.     AlaTrade's predecessor AlaTrade Foods, LLC, acting through Davis Lee as the Sole Manager of the company, selected the members of a three-person committee consisting of officers beholden to Davis Lee (the company's President, Chief Financial Officer, and Director of Operations), which appointed the Trustee on behalf of AlaTrade Foods as transaction trustee of the Plan's ESOT prior to the ESOP Transaction at a time when Selling Shareholders owned and controlled AlaTrade Foods. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for AlaTrade stock.

46.     The Trustee received fees from AlaTrade for his services as transaction trustee in the ESOP Transaction, under a contract made prior to the Selling Shareholders' sale of AlaTrade stock to the Plan, while the Selling Shareholders still owned AlaTrade and AlaTrade Foods. The Trustee also received fees after the ESOP Transaction because he was appointed ongoing trustee to the Plan to serve following the closing of the ESOP Transaction.

**The Plan was Injured by its Overpayment for Company Stock in the ESOP Transaction**

47.     Since on or about the time of AlaTrade Foods' formation, including at the time of the ESOP Transaction, AlaTrade and its predecessor have been under the control of long-time manager, director and officer Davis Lee.

48.     Davis Lee was centrally involved in conceiving, facilitating, and executing the ESOP Transaction, including conducting a process for ownership transition from the Selling Shareholders to an ESOP rather than to an outside buyer; hiring and working with ESOP Transaction advisors for AlaTrade and Selling Shareholders; appointing members of the committee that hired a compliant Trustee to nominally represent the counter-party Plan; causing corporate

11

reorganizations and mergers in advance of the ESOP Transaction; directing the preparation of financial projections by AlaTrade's management and staff for use in valuations in the ESOP Transaction; and approving AlaTrade's lending of approximately $150 million to the ESOT in the leveraged transaction.

49.     Davis Lee retained control of the AlaTrade Board after the ESOP Transaction as a result of his position as a director and CEO; through employees, appointees, and/or proxies holding positions as directors and/or officers; due to the millions of dollars of Company and ESOT debt he and the Selling Shareholders held from the ESOP Transaction including but not limited to rights arising from warrants or other synthetic equity issued to them; through various transaction documents, including the stock purchase agreement and warrants; and through a compliant Trustee that could be fired by AlaTrade's Board of Directors, making any alleged ESOP control illusory.

50.     The Trustee's valuation advisor valued the AlaTrade stock using an industry capital structure instead of the Company's actual capital structure in the discount rate for its income methods. Using AlaTrade's actual capital structure, as it should have done, would have lowered the Company's valuation.

51.     The Trustee's valuation advisor failed to appropriately account for the impact of the Stock Appreciation Rights ("SAR") issued to Company management. The dilutive impact of the SARs was millions of dollars greater than utilized by the Trustee. An appropriate analysis would have resulted in a lower valuation.

52.     The Plan suffered losses as a result of the ERISA prohibited transactions alleged herein, in an amount to be determined following discovery and expert analysis of non-public information concerning the Trustee's and its financial advisor's valuation and due diligence

methodologies, AlaTrade financials and growth projections, and other documents and information that were considered or should have been considered in the ESOP Transaction.

53.    As a result of the prohibited transactions, Plaintiffs and the Plan's participants, whose losses are coterminous with the Plan's, received diminished stock allocations, saw their Plan take on excessive debt to finance the ESOP Transaction, and suffered monetary losses to their individual Plan accounts.

54.    The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of AlaTrade shares at the time of the ESOP Transaction.

55.    Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their AlaTrade shares at the time of the ESOP Transaction.

56.    All consideration paid to the Selling Shareholders in connection with the ESOP Transaction, including warrants and notes they received, is in the current possession of the Selling Shareholders and/or traceable.

**Plaintiffs Exhausted Plan Administrative Processes**

57.    On August 15, 2024, Plaintiffs submitted a letter to the Plan Administrator asserting claims related to the ESOP Transaction.

58.    By the Fifth Amendment to the Plan executed by AlaTrade's President John Pittard on November 11, 2024, as approved by AlaTrade's Board of Directors on October 17, 2024, the Plan Administrator was replaced by a "Claims Fiduciary," Victor Aspengren, for purposes of reviewing and deciding initial claims and appeals.

59.    The appointment of this biased Claims Fiduciary—an ESOP-industry insider as, among other things, former Chair of the Board of Directors of the National Center for Employee

13

Ownership (NCEO) and former Director at ESOP trustee Prairie Capital Advisors, Inc.—was made nearly three months *after* Plaintiffs submitted their claims. This appointment served the interests of the Defendants, not the ESOP and its participants.

60.     AlaTrade, through its Board of Directors, has the duty and responsibility under the Plan to review the performance of persons to whom duties have been allocated or delegated, including but not limited to the Claims Fiduciary, the Trustee, and the Plan Administrator.

61.     Persons with the authority to appoint and remove fiduciaries must do so with the care, skill, prudence, and diligence required by ERISA's fiduciary duty provisions and bear duties to monitor and inform their appointees.

62.     On February 11, 2025, the Claims Fiduciary denied Plaintiffs' claims.

63.     On May 12, 2025, Plaintiffs appealed the Claims Fiduciary's decision to the Claims Fiduciary.

64.     On August 4, 2025, the Claims Fiduciary denied Plaintiffs' appeal. Plaintiffs therefore exhausted Plan administrative processes or remedies.

65.     The Claims Fiduciary appointed by AlaTrade did not conduct a full and fair review of Plaintiffs' claims as required by ERISA. The Claims Fiduciary refused to produce to Plaintiffs information requested by Plaintiffs necessary for them to present the analysis required for a full and fair review on appeal. The inadequate record and cursory analysis precluded any reasoned decision on the merits of Plaintiffs' claims. Plaintiffs were denied a reasonable opportunity for a full and fair review of their claims.

66.     The Claims Fiduciary appointed by AlaTrade assembled an inadequate, incomplete, and truncated record preventing a full and fair review, and failed to place in the administrative record and produce to Plaintiffs documents relating to the Trustee's investigation

into the fair market value of AlaTrade stock as of the date of the ESOP Transaction, the due diligence and valuation methodologies of the Trustee and its financial and other advisors, and ESOP Transaction negotiations. The Claims Fiduciary intentionally failed to consider and disclose documents or information that would have supported Plaintiffs' claims.

67.     Requested documents that the Claims Fiduciary failed to disclose to Plaintiffs and to consider as part of the administrative record were in the possession, custody and control of AlaTrade and AlaTrade Foods, and obtainable from their agents and appointees, including the Trustee.

## CLAIMS FOR RELIEF

### COUNT I
**Causing Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Trustee Stephen C. James**

68.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

69.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here AlaTrade stock, with a party in interest, here Selling Shareholders, as took place in the ESOP Transaction.

70.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here Selling Shareholders and AlaTrade, as took place in the ESOP Transaction.

71.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Selling Shareholders, of any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to Selling Shareholders for stock.

15

72.    The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in his capacity as trustee for the Plan.

73.    The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

74.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

75.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

76.    The Trustee has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II
### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Trustee Stephen C. James

77.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

78.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her or its duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

79.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

80.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

81.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

82.    The Trustee was required to undertake an appropriate and independent investigation of the fair market value of AlaTrade stock in or about June 2021 in order to fulfill his fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the AlaTrade stock purchased by the Plan.

83.    The Trustee was required to act independently on behalf of the Plan, to probe and question financials, projections, and other information provided by AlaTrade management and the seller side, and he did not adequately do so.

84.    The Trustee was required to negotiate for the Plan to pay no more than fair market value for AlaTrade stock in the ESOP Transaction, and he failed to do so, but instead approved the imprudent Transaction.

85.    The Trustee breached his duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

86.    The Trustee has caused losses to the Plan by his breaches of fiduciary duty in an amount to be proved specifically at trial.

**COUNT III**
**Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3),**
**Against Selling Shareholders**

87.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

88.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan.

89.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

90.    As a result of the prohibited stock transaction and breaches of fiduciary duty described above, Selling Shareholders received Plan assets in payment above fair market value for their AlaTrade stock.

91.    Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

18

92. Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their AlaTrade stock and taking of loans from them and AlaTrade in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that Selling Shareholders included the director and CEO of AlaTrade and his spouse, a Plan fiduciary, and 10% or more shareholders, (5) that the Trustee caused the Plan's ESOT to engage in the stock and loan transactions, and (6) that they received monetary assets of the Plan in the ESOP Transaction.

93. As parties to and/or beneficiaries of the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by the Trustee on behalf of the ESOT; as the sellers of $160 million in stock with an interest in having knowledge of and/or competently negotiating the Transaction; with regard to Davis Lee, as an officer and director of AlaTrade, which participated in the loan component of the Transaction with his approval, and which was the sponsor, Named Fiduciary, and fiduciary administrator of the Plan; with regard to Davis Lee, as a Plan fiduciary; with regard to Davis Lee, as CEO and sole director of AlaTrade, whose team provided company financial information and projections to the buyer side, and which made other disclosures in response to requests for information that showed the scope of the Trustee's inadequate due diligence, and that the Trustee caused the ESOT to pay above fair market value for AlaTrade stock, Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction; that the Plan paid more than fair market value in the ESOP Transaction; that the Trustee did not adequately investigate and value the stock; and that the loans were not primarily for the benefit of participants and beneficiaries of the Plan but for the interests of Selling Shareholders.

94.     Further, it may be inferred that Selling Shareholders had "reasonable knowledge of all relevant facts" because the fair market value standard is that fair market value is the price at which the stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all relevant facts. Selling Shareholders had knowledge of the relevant facts, and based upon them caused AlaTrade to take part in the ESOP Transaction, and took part in the Transaction themselves, directly or indirectly.

95.     Selling Shareholders are liable for knowingly participating in violations of ERISA § 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D), and ERISA § 404(a), 29 U.S.C. § 1104(a), alleged in Count I and Count II.

96.     Selling Shareholders have profited from the prohibited transactions and breaches of fiduciary duty in an amount to be proven at trial, and upon information and belief, they remain in possession of assets that belong to the Plan.

97.     Selling Shareholders are subject to appropriate equitable relief including disgorgement or restitution of any ill-gotten gains they received in connection with the ESOP Transaction, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for AlaTrade stock as of the date of the Transaction and to give the Plan powers or other consideration for which it paid but did not receive, having the transaction rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

<u>**COUNT IV**</u>
**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a),**
**Against AlaTrade and AlaTrade Foods**

98.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

99.    A person who appoints a trustee for an ESOP transaction is a fiduciary.

100.    An appointing fiduciary must act diligently and prudently in the selection of a trustee and has an ongoing duty to monitor the trustee and provide information to the trustee in the appointing fiduciary's possession that the trustee needs to carry out its duties.

101.    AlaTrade Foods appointed the Trustee to serve as trustee for the Plan. AlaTrade Foods is the predecessor of AlaTrade. AlaTrade allowed the Trustee to maintain his position as ESOP trustee when AlaTrade was formed in June 2021 and AlaTrade Foods became its subsidiary, prior to the ESOP Transaction. AlaTrade and AlaTrade Foods are fiduciaries with the authority to appoint and remove the ESOP trustee.

102.    AlaTrade and AlaTrade Foods were required to select a trustee who would act independently on behalf of the Plan; to probe and question financial information and other information provided by AlaTrade and AlaTrade Foods management and the seller side; and to negotiate for the Plan to pay no more than fair market value for AlaTrade stock in the ESOP Transaction; but failed to do so and instead appointed the Trustee who approved the imprudent Transaction and allowed him to remain in his position after they knew or should have known of his imprudent practices.

103.    AlaTrade and AlaTrade Foods, in breach of their fiduciary duties, failed to engage in a diligent and prudent process in selecting the Trustee, failed to monitor the Trustee's performance in investigating the fair market value of AlaTrade stock, failed to inform the Trustee of information relevant to the Transaction, and failed to remove the Trustee.

104.    AlaTrade and AlaTrade Foods possessed information that the Trustee needed to fulfill his duties in ensuring the Plan paid no more than fair market value, including the dilutive impact of SARs. AlaTrade and AlaTrade Foods knew or should have known that the Trustee was proceeding with the ESOP Transaction despite inadequate due diligence because AlaTrade and AlaTrade Foods knew that the Trustee had not received all material information regarding the Company.

105.    AlaTrade and AlaTrade Foods are liable under 29 U.S.C. § 1109 to restore all losses to the Plan, to disgorge profits, and are subject to other appropriate equitable or remedial relief.

<u>COUNT V</u>
**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a),
Against AlaTrade**

106.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

107.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her or its duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

108.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan. Equitable relief available under this statute includes but is not limited to surcharge from a fiduciary.

22

109. ERISA § 503(2) requires that claimants be "afford[ed] a reasonable opportunity" for a "full and fair review" on appeal of the denial of their claims. 29 U.S.C. § 1133(2); *see also* 29 C.F.R. § 2560.503–1(h).

110. A "full and fair review" requires, *inter alia*, that claimants "shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(h)(2)(iii).

111. A plan must "provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503–1(l)(1).

112. 29 C.F.R. § 2560.503–1(h)(2)(iii) "provides an expansive definition of documents and records that claimants are entitled to receive upon request in connection with their right to receive a 'full and fair review' of their claims." *Bryant v. Life Ins. Co. of N. Am.*, No 07-AR-1407, 2007 WL 9715210, at *4 (N.D. Ala. Oct. 2, 2007). A fiduciary's "failure to provide requested information may result in a determination that it did not accord the claimant a 'full and fair review.'" *Id.* at *4 n.7 (cleaned up, citation omitted).

113. In the administrative review process, the Claims Fiduciary appointed by AlaTrade prevented a full and fair review of Plaintiffs' claims by not producing documents requested by Plaintiffs and not considering such documents, as part of the administrative record, that were necessary for a full and fair review.

114. AlaTrade was required to select and monitor the performance of a Claims Fiduciary who would undertake a full and fair review of Plaintiffs' claims but failed to do so and instead appointed the Claims Fiduciary who refused to produce relevant information and compiled an inadequate and incomplete administrative record that did not permit a decision on the merits.

115. AlaTrade breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

116.    AlaTrade caused losses to Plaintiffs by their breaches of fiduciary duty in an amount to be proved specifically at trial.

## CLASS ACTION ALLEGATIONS

117.    On Counts I through IV, Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

All participants and beneficiaries of the Plan at any time from its inception until December 31, 2025. Excluded from the Class are the shareholders who sold their stock to the Plan, directly or indirectly, and their immediate families, legal representatives, successors, and assigns of any such excluded persons.

118.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2024, there were 2,008 participants in the Plan.

119.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a.    Whether Defendant Stephen C. James served as trustee in the Plan's acquisition of AlaTrade stock;

b.    Whether Defendant Stephen C. James was an ERISA fiduciary of the Plan;

c.    Whether Defendant Stephen C. James caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase AlaTrade stock from, take loans from, and transfer assets of the Plan to, parties in interest;

d.    Whether Defendant Stephen C. James breached his fiduciary duties in his investigation and approval of the ESOP Transaction;

e.    Whether Defendant AlaTrade was a party in interest and gave a loan to the Plan;

f.    Whether Defendants Selling Shareholders were parties in interest;

24

g.   Whether Defendants Selling Shareholders gave loans to the Plan;

h.   Whether Defendants Selling Shareholders knowingly participated in the prohibited transactions and the Trustee's breaches of fiduciary duty;

i.   Whether Defendants AlaTrade and AlaTrade Foods breached fiduciary duties by appointing, and failing to monitor, inform, and remove, the Trustee;

j.   Whether Defendant AlaTrade breached its fiduciary duties in the Plan's administrative review process concerning Plaintiffs' claims;

k.   The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations; and

l.   The appropriate relief for Defendants' violations of ERISA.

120.   Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid above fair market value and took on excessive loans for AlaTrade stock, resulting in their being allocated fewer shares of stock, and they continues to suffer such losses in the present because the Trustee failed to correct the overpayment by the Plan.

121.   Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

122.   Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members, and/or because the prosecution of separate actions by individual Class members

would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

123.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    Declare that Defendant Stephen C. James, as Trustee, caused the Plan to engage in prohibited transactions and breached his fiduciary duties under ERISA;

B.    Declare that Selling Shareholders knowingly participated in a prohibited transaction with the Plan and the Trustee's breaches of fiduciary duty in violation of ERISA;

C.    Declare that AlaTrade and AlaTrade Foods breached their fiduciary duties;

D.    Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

E.    Order reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for AlaTrade stock as of the date of the ESOP Transaction, and any other appropriate reformation;

F.    Order rescission of the ESOP Transaction (as a fallback remedy only in lieu of a monetary award of the Plan's losses, restitution or disgorgement);

G.    Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

26

H.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

I.    Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

J.    Remove the Trustee as Plan fiduciary, enjoin him from acting as a fiduciary for any employee benefit plan that covers or includes any AlaTrade employees or members of the Class, and appoint an independent fiduciary in place of the Trustee;

K.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

L.    Enjoin Defendants from dissipating any of the proceeds they received from the ESOP Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

M.    Enjoin Defendants from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan's and Plan participants' ability to recover the same;

N.    Order Defendants to pay prejudgment and post-judgment interest;

O.    Certify this action, on Counts I through IV, as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel; and

P.    Award such other and further relief as the Court deems equitable and just.

Dated: April 22, 2026

Respectfully submitted,

**BAILEY & GLASSER LLP**

/s/ David L. Selby
David L. Selby II
3000 Riverchase Galleria
Suite 905
Birmingham, AL 35244
Telephone: (205) 988-9253
Facsimile: (205) 733-4896
dselby@baileyglasser.com

Gregory Y. Porter (to be admitted *pro hac vice*)
Ryan T. Jenny (to be admitted *pro hac vice*)
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Patrick O. Muench (to be admitted *pro hac vice*)
318 W. Adams Street, Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Laura Babiak (to be admitted *pro hac vice*)
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
lbabiak@baileyglasser.com

*Attorneys for Plaintiffs*